ADRIAN C. ROBINSON

*vs.*

CHARLES R. BUSWELL AND LESTER BUSWELL.

Penobscot.     Opinion April 27, 1931.

*P. A. Hasty,*
*B. W. Blanchard,* for plaintiff.
*P. A. Smith,* for defendants.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

FARRINGTON, J. Action for breach of a warranty that heifers sold by the defendants to the plaintiff were sound and free from communicable diseases. The case is before this court on general motion, after verdict for plaintiff against both defendants in the sum of $891.96.

It appears in evidence that the plaintiff owned eleven registered pure bred Jersey cows and heifers and seven grade Jerseys. In October, 1928, desiring to add to his herd, he purchased two two-year old grade Jersey heifers from Charles R. Buswell, one of the defendants, giving him a check for $50.00 and turning in a pure bred Jersey cow to complete payment.

On October 17, 1928, these two heifers were delivered to the plaintiff by Lester Buswell, the other defendant, who was the son of Charles R. Buswell, and were mingled with the rest of the herd in which the plaintiff testified that up to this time there had never been a case of contagious abortion. One of these heifers developed what was claimed to be contagious abortion, the plaintiff testifying that on December 8, 1928, that heifer dropped one dead calf "about half grown." He also testified that on February 14, 1929, the other heifer purchased of Charles R. Buswell dropped a seven months' calf which lived two hours. It also appears in the plaintiff's testimony that after having bred his pure bred Jerseys and his grade Jerseys "as near December 11th as I could," none of them "went the full term before they dropped their calves," and that since the purchase of the heifers of Charles R. Buswell he had lost twelve calves.

After a careful reading of the entire record, we are convinced that the jury was fully justified in rendering a verdict against Charles R. Buswell, one of the defendants, nor do we see any reason to disturb their conclusion as to the amount awarded as damages.

As to Lester Buswell, the other defendant, the record discloses a different situation.

In November following the purchase of the two heifers from Charles R. Buswell the plaintiff bought two more from Lester Buswell. These two were not mingled with the plaintiff's herd but were taken to his step-father's farm about a third of a mile away

and both were sold within a very few days from the time they were purchased.

In connection with the purchase of the first two heifers from Charles R. Buswell, the plaintiff testified in cross examination that he had "nothing to do with Lester Buswell" and that in the deal involving the purchase of the two from Lester he had "nothing to do" with the father. He also stated that the two purchased from Lester "did not damage my herd."

It is clear that whatever connection with the case the defendant, Lester Buswell, had, must have arisen from the sale of the first two heifers which the plaintiff had from Charles R. Buswell.

The record does not disclose that Lester Buswell himself at any time made any warranty with reference to these two heifers and the plaintiff testified positively that Lester was not present in the pasture when Charles R. Buswell made his statement of warranty, although both Buswells testified that he was present at that time. There is no direct evidence indicating that the father and son jointly owned these two heifers or any other heifers or cattle. One undisputed piece of evidence may fairly lead to the conclusion that Lester Buswell and his father were not conducting any joint operation in the cattle business, regardless of what their relations might have been in the meat business to which we will refer later. Charles R. Buswell testified that the plaintiff in October, when he selected for his herd the first two heifers from those in the pasture, was told that one of them belonged to Lester, the son, and that he, Charles R. Buswell, would sell her to him if he, the father, could buy her from the son, and that the son finally agreed to sell her to his father and did so sell her and that the father then closed the trade with the plaintiff for the two heifers, receiving as payment the $50.00 check hereinbefore mentioned, which the son testified was by his father endorsed to him in payment for the heifer sold by him to his father.

The father stated that a meat cart was driven by his son but that the son had nothing to do with the business. On cross examination he acknowledged that on the cart were the words "Charles R. Buswell & Son." The son, thirty-five years of age, testified that he was not in partnership with his father; that "I peddle meat for my father"; that he was "employed" by him; that he himself bought.

and sold some cattle. In reply to a question, "What is that name 'C. R. Buswell & Son' on your cart for?", Lester replied, "I don't know. He (referring to his father) had it put there when I came home from the war," and stated that he had driven the cart for ten years.

The jury evidently, in reaching the verdict against the son, placed great weight on the words, "Charles R. Buswell & Son" on the cart. Outside of that evidence, which at best is entitled to little weight, save as to a possible joint ownership and interest in the meat business, there is in the record, in our opinion, not sufficient evidence of probative value upon which a verdict against Lester Buswell could be based. If joint interest and ownership in the meat business could be assumed as proved, that by no means signifies the same relationship in buying and selling cattle generally. After careful consideration of the record, we can not escape the conclusion that the evidence therein disclosed, reviewing it in the light most favorable to the plaintiff, does not justify this court in sustaining the verdict as to Lester Buswell.

We may well use the language of the court in *Day* v. *Scribner et al*, 127 Me., page 189 : "While there may have been evidence, within the province of the jury to believe or disbelieve, which might have supported a verdict against one defendant alone, no fact in the evidence for the plaintiff, reading that evidence as a whole, nor inference from any proven fact, tended to indicate liability on the part of both defendants."

No exceptions were taken to the charge of the presiding Justice and this court may properly assume that the jury was fully instructed as to its right, under Chap. 87, Sec. 103, R. S. (1916) (Chap. 96, Sec. 105, R. S. 1930), to bring in a separate verdict in favor of this defendant, if it had so found. A verdict against both defendants having been rendered, the mandate will be,

*Motion sustained.*
*Verdict set aside.*
*New trial granted.*